1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10    MICHAEL ANDERSON,

11           Plaintiff,                    No. CIV S-04-0583 MCE DAD P

12        vs.

13    DOCTOR EXUM,

14           Defendant.                    FINDINGS AND RECOMMENDATIONS

15    _____/

16           Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking

17    relief pursuant to 42 U.S.C. § 1983.  The matter is before the court on defendant Exum's motion

18    for summary judgment.

19                              BACKGROUND

20           When plaintiff commenced this action, he was confined at High Desert State

21    Prison ("High Desert").  By a notice of change of address filed on April 5, 2005, plaintiff notified

22    the court of his transfer to California State Prison - Solano.

23           This case is proceeding on plaintiff's original complaint, filed January 29, 2004.

24    The defendant is Wade F. Exum, M.D.  The allegations of plaintiff's complaint are summarized

25    here:  On December 31, 2002, plaintiff and two hundred other black inmates at High Desert were

26    accused of being members of a gang and were placed in administrative segregation; staff took all

1  medications; for almost two years, plaintiff had been receiving medication for manic depression

2  or bipolar affective disorder; on January 9, 2003, plaintiff was seen in administrative segregation

3  by Dr. Salenger, who did not ask plaintiff how he was feeling or what symptoms he had, but said,

4  "I'm going to wait on giving you your medication," to see what happens; plaintiff believed Dr.

5  Salenger was bullying him with his power; on January 16, 2003, the black inmates were released

6  from administrative segregation; plaintiff sent several requests for refills of the medications he

7  had been taking; on February 24, 2003,[1] plaintiff was seen by Dr. Exum, a psychiatrist whom

8  plaintiff had not seen before; plaintiff tried to explain how he was feeling; although Dr. Exum

9  had plaintiff's medical file, he did not look at it; Dr. Exum put his feet up on the desk, laughed at

10  plaintiff, and accused plaintiff of wanting the medication to get high; Dr. Exum refused to

11  prescribe refills of the medications plaintiff had been prescribed previously; after leaving the

12  doctor's office, plaintiff went into a depressive period as a result of not receiving his medication;

13  plaintiff was unable to control his actions and tried to commit suicide; plaintiff almost bled to

14  death and received 32 stitches in his left wrist; Dr. Exum came to see plaintiff after plaintiff's

15  suicide attempt and accused plaintiff of being a fake; plaintiff filed a staff complaint; every time

16  plaintiff asked to see a doctor, Dr. Exum was sent to see him; after Dr. Exum found out about the

17  staff complaint, he came to see plaintiff, laughed about the complaint, and said he was going to

18  win; after the suicide attempt, plaintiff was on suicide watch more than twelve times, but medical

19  staff refused to give plaintiff anti-depressant or anti-psychotic medication and filled plaintiff's

20  medical file with paperwork saying there was nothing wrong with him; some doctors ordered

21  medication for plaintiff, but the orders were stopped; plaintiff has attempted suicide four or five

22  times; at High Desert State Prison there is no treatment available for plaintiff or treatment was

23  refused.

24  /////

25  ———————————

26      [1] According to the evidence presented by both parties, plaintiff was seen by defendant
Exum on February 25, 2003.

Plaintiff contends that Dr. Exum acted with deliberate indifference to plaintiff's medical needs, subjected him to mental abuse, denied him adequate mental health care, and subjected him to cruel and unusual punishment.  Plaintiff requests (1) treatment by qualified doctors and psychologists who are up-to-date on how to treat his condition; (2) transfer to an institution that provides suicide prevention and one-on-one therapy as well as group therapy; (3) medication to control plaintiff's mood swings and the voices he hears; (4) counseling and psychotherapy so that plaintiff can learn how to live and maintain a positive lifestyle; (5) compensatory damages in the sum of $100,000; (6) punitive and exemplary damages; and (7) transfer to a medical institution.

Defendant Exum filed an answer to the complaint on September 28, 2004.  A discovery order was issued on October 5, 2004, and a scheduling order was filed on February 2, 2005.  Defendant filed a timely motion for summary judgment motion on September 1, 2005, and plaintiff filed his opposition on September 28, 2005.  On October 11, 2005, defendant filed a reply and objections to plaintiff's exhibits.  Plaintiff filed a reply to the reply, together with a response to defendant's objections to exhibits.

By order filed November 22, 2005, the dates set for pretrial conference and jury trial were vacated.

THE PARTIES' ARGUMENTS AND EVIDENCE

I. Defendant's Motion

Defendant seeks judgment in his favor on the grounds that he provided plaintiff with adequate medical services consistent with community standards and that he was not deliberately indifferent to plaintiff's psychiatric medical needs.

Defendant offers his declaration dated August 22, 2005.  He declares that he has been licensed as a medical doctor and psychiatrist in California since 1982 and is currently a contract psychiatrist for the California Department of Corrections and Rehabilitation at Salinas Valley State Prison.  He is not involved with and has no control over any medical or psychiatric

1   care plaintiff is receiving currently.  In February 2003, he was employed at High Desert State

2   Prison as a contract psychiatrist.  His duties involved pre-admission screening of inmates

3   regarding their psychiatric care, admission and discharge of inmates, evaluations and crisis

4   intervention treatment, and prescription of psychiatric medication.

5           Defendant declares as follows regarding his treatment of plaintiff on February 25,

6   2003:  He performed a psychiatric assessment and examination consistent with the community

7   standards of care for psychiatrists and consistent with CDC policies and procedures; he reviewed

8   plaintiff's medical file prior to and during the examination; the examination lasted approximately

9   40-45 minutes; plaintiff's main complaint was that he had not received psychiatric medication

10  since December 2002; plaintiff related that he had been prescribed Lithium, Seroquel, and other

11  medications; plaintiff cited a history of treatment for paranoid schizophrenia, seizures, and other

12  medical problems; plaintiff admitted a 25-year history of substance abuse, including alcohol,

13  PCP, and LSD, and admitted that he was incarcerated for killing three people while driving

14  "under the influence"; defendant found no gross evidence of psychosis or disorganization;

15  plaintiff's speech was clear and coherent, and he was oriented times three; he appeared goal

16  directed and responsive, his affect was appropriate and broad in range, and his mood seemed

17  eurythmic; plaintiff did not tell defendant he was experiencing extreme mood swings; plaintiff

18  denied suicidal or homicidal ideation; plaintiff's interaction with defendant was highly cognitive

19  and was not suggestive of psychotic symptoms; in his review of plaintiff's medical records,

20  defendant found that on January 2, 2003, plaintiff's medication was discontinued due to reported

21  hoarding of medications; because defendant found no gross evidence of psychosis or mental

22  illness, it was his professional opinion that plaintiff was not in need of prescription or psychiatric

23  medicine; defendant noted that plaintiff should be monitored for mental health deterioration;

24  defendant scheduled plaintiff for a return appointment in six weeks; when defendant explained

25  his decision to plaintiff, plaintiff became argumentative and demanding and was disgruntled

26  about the decision not to prescribe medication; plaintiff disagreed with defendant's opinion that

4

1  any conditions or problems he had in the past did not justify receiving similar treatment and

2  medications absent a diagnosis warranting such treatment and medications; defendant told

3  plaintiff that consuming the kinds of medication he was demanding would make him feel

4  drugged or high if he did not have a clinical condition for which the medications were indicated;

5  plaintiff threatened to sue defendant and to commit self-harm if defendant did not prescribe

6  medications for him.

7         Defendant declares that, in his opinion, plaintiff did not have a serious medical

8  need when defendant examined him on February 25, 2003.  Defendant states that he was not

9  indifferent to plaintiff's needs, did not believe plaintiff faced any substantial risk of harm by not

10 being prescribed medications, and would not have disregarded any potentially serious risk of

11 harm to plaintiff.  He felt that supplying plaintiff with the medications he was demanding was

12 contraindicated and would have been harmful to plaintiff's health, given his drug-seeking

13 behavior and substance abuse background.  Defendant noted that plaintiff had been without

14 medications for two to three months and that he had made no suicide attempts or gestures in that

15 time.  Defendant states that he treated plaintiff with dignity and professionalism, to the best of his

16 ability.  In his expert opinion, his treatment of plaintiff on February 25, 2003, was consistent with

17 the community standard of care and with departmental procedures and policies for the treatment

18 of prisoners seeking psychiatric or mental health care.

19         Defendant declares that on February 26, 2003, he learned that plaintiff had cut his

20 wrists.  Plaintiff was admitted to the emergency room, and upon defendant's entering the room,

21 plaintiff said to defendant, "I don't want to talk to you," and initiated voluntary mutism.

22 Defendant observed plaintiff and noted that he appeared alert and calm and exhibited no

23 symptoms of psychosis.  Plaintiff was examined by medical staff and was admitted to a safety

24 cell.  In defendant's opinion, plaintiff's injuries were more consistent with suicidal gesture than

25 with suicidal attempt and were inflicted with the hope of getting a doctor to prescribe

26 psychotropic medication for him.

1    On the basis of the statements made in his declaration, defendant argues that the

2  facts demonstrate that he did not violate plaintiff's constitutional rights, that he treated plaintiff

3  with dignity, respect, and professionalism in an honest effort to provide plaintiff with appropriate

4  medical care, and that his actions were consistent with the community standard of care and in

5  compliance with departmental procedures and policies governing mental health treatment.

6  Defendant contends that he is therefore entitled to judgment as a matter of law.

7    Defendant asserts that plaintiff cannot establish that defendant knew of any

8  substantial risk of serious harm or that he deliberately disregarded such a risk, given the evidence

9  that defendant reviewed plaintiff's medical file, was familiar with plaintiff's history, and

10  thoroughly examined plaintiff during a psychiatric assessment that lasted 40 to 45 minutes.

11  Defendant argues that it was his expert medical opinion, based on his training as a psychiatrist,

12  that plaintiff did not need highly intoxicating psychiatric medication because there was no gross

13  evidence of psychosis or mental illness and plaintiff denied suicidal or homicidal ideation.

14  Defendant concludes that plaintiff's disagreement with defendant's refusal to prescribe

15  medication on February 25, 2003, was nothing more than a difference of opinion as to diagnosis

16  and treatment and is not a basis for an Eighth Amendment violation.

17  II.  Plaintiff's Opposition

18    Plaintiff's opposition consists of six pages of argument, plaintiff's declaration

19  under penalty of perjury, and documentary exhibits numbered 1 through 12A.[2]  Plaintiff argues

20  that defendant was deliberately indifferent to plaintiff's serious medical needs when he failed to

21  provide appropriate medical treatment and medications.  Plaintiff contends that, as a result of not

22  receiving his medications, he was not able to control his actions and attempted suicide.

23    Plaintiff denies that the examination on February 25, 2003, lasted as long as 40 to

24  45 minutes.  Plaintiff asserts that the defendant examined him for five to seven minutes at most,

25  _____

26    [2]  The sixth page of plaintiff's argument does not follow the first five pages but is instead
the final page of the 28-page opposition.

1  denied psychiatric medications, and then excused plaintiff from his office.  Plaintiff argues that

2  no psychiatrist in the CDC system has 40 to 45 minutes to examine an inmate.  He contends that

3  interviews with psychiatrists never last more than ten minutes per inmate and that defendant's

4  usual examination in Building 5 consisted of coming to an inmate's cell door and asking the

5  inmate whether he was "okay" and whether he was receiving his medications.

6          Plaintiff argues that he told the defendant he had a medical history of treatment

7  for paranoid schizophrenia, seizures and other medical problems, that he had not been treated for

8  his conditions since December 2002, and that his demons were talking to him again.  Plaintiff

9  asserts that the defendant laughed at what plaintiff was saying, told plaintiff he did not look

10  crazy, remarked that plaintiff just wanted to get high, and told plaintiff to leave without ever

11  looking in plaintiff's file during the five- to seven-minute interview.  Plaintiff reiterates that he

12  had never seen the defendant before this examination.  He contends that, if the defendant had

13  opened plaintiff's file he would have seen plaintiff's long and continuing history of mental health

14  problems, as well as the record of medications prescribed by psychiatric doctors at High Desert.

15  Plaintiff contends that he tried to explain to the defendant that he had a long history of mental

16  health problems before incarceration but defendant refused to listen.

17          Plaintiff concludes that defendant inflicted unnecessary and wanton pain on him

18  by refusing medications and thereby causing him to slash his wrists.  Plaintiff contends that

19  defendant's refusal to listen and failure to study plaintiff's medical records demonstrated

20  deliberate indifference and criminal recklessness.  Plaintiff reasons in the alternative that if

21  defendant studied the file before and during the examination, as claimed, that would prove

22  deliberate indifference because defendant's decision to deny treatment would have been made

23  with knowledge of plaintiff's history.  Plaintiff asserts that all of his medications were renewed

24  after the episode on February 26, 2003, and that they have been continued to the present.

25          In a declaration dated September 21, 2005, plaintiff declares the following facts

26  under penalty of perjury:  on February 25, 2003, he was examined by the defendant for less than

seven minutes; defendant refused to listen to plaintiff and laughed when plaintiff tried to tell him how he was feeling and what he was going through; during the examination, defendant placed his feet on the desk, leaned back in his chair, told plaintiff he did not look crazy to him, started laughing, and said plaintiff did not need medications and just wanted to get high; defendant did not open plaintiff's medical file during the time plaintiff was in the office with him; the defendant denied plaintiff civil conversation and appropriate medical treatment; since the events at issue, plaintiff has continuously been on several psychiatric medications for his psychological conditions.

Plaintiff's first two exhibits appear to be offered in support of his argument regarding pre-incarceration mental health needs and medication history.  Exhibit 1 appears to be an original letter addressed to plaintiff and dated November 25, 2002, from a mental health center concerning plaintiff's request for a copy of records of treatment by Dr. Lim.  Exhibit 2 appears to be a copy of the second page of an examination of plaintiff on November 4, 2002, by Alan Roche, M.D.  Exhibit 2 includes a section on past medical history and indicates "Significant for bipolar disease for which he takes Lithium and Senoquel [sic] and another medication that he is unaware of the name of."

Plaintiff's Exhibit 3 is a copy of a CDC medical record form imprinted with plaintiff's name.  It appears that two photographs were attached to the original form, both subscribed with notations dated February 26, 2003, indicating that the photographs depict plaintiff's wrists on that date.[3]

Plaintiff's Exhibit 4 is an original document signed by plaintiff and dated February 25, 2003.  It appears to be comprised of notes concerning plaintiff's interview with defendant.

---

[3]  The Clerk has designated plaintiff's opposition as a document to be maintained on paper.  The document has been placed in the court file that contains documents filed in this action prior to the court's conversion to electronic filing.

1       Plaintiff's Exhibit 5 is an original document signed by an inmate named D. Smith

2   and dated February 28, 2003.  It concerns events seen or heard by the inmate on the day plaintiff

3   was examined by defendant.  This document is not a notarized statement or a declaration under

4   penalty of perjury.  Similarly, Exhibit 5A is an original document signed by an inmate named

5   Leslie James Jones and dated September 20, 2005.  It concerns the usual length of psychiatric

6   interviews in California prisons.  This document is not a notarized statement or a declaration

7   under penalty of perjury.

8       Plaintiff's Exhibits 6 through 10 are copies of documents from plaintiff's prison

9   medical records.  These copies reflect that medications were prescribed for plaintiff on February

10  27, 2003, and during the months thereafter.  Exhibit 9 is a discharge summary reflecting that

11  plaintiff was admitted to the emergency room on February 26, 2003, and discharged on March 4,

12  2003.  The summary refers to plaintiff's history of polysubstance abuse, mentions medication

13  hoarding, and reflects that plaintiff was admitted to a safety cell because he had made a

14  significant suicidal gesture and complained of depression upon arrival at the emergency room.

15  The summary includes the physical findings of the doctor who examined plaintiff and concludes

16  with an impression of schizophrenia.  The summary reflects that plaintiff was prescribed Lithium

17  Carbonate and Prozac and that he was discharged from the hospital after he stabilized.  Exhibit

18  10 is a consent form dated April 11, 2002, by which plaintiff consented to taking Prozac.

19      Plaintiff's Exhibit 11 consists of the first and second level responses to plaintiff's

20  inmate appeal concerning defendant's treatment of him in February 2003.  Plaintiff's appeal was

21  granted at the first level and denied at the second level.  The first-level response refers to

22  plaintiff's allegations that defendant asked him why he had been hoarding medications and that

23  plaintiff responded that his former cellmate had left some of his medications behind.  The appeal

24  response at the first level indicates that plaintiff was referred to California Medical

25  Facility/Department of Mental Health on March 28, 2003, was accepted for transfer, and was

26  transferred on April 14, 2003, for inpatient mental health treatment.  The response at the second

level, dated June 17, 2003, reflects that a treatment team reviewed plaintiff's file on May 21, 2003, determined that plaintiff was designated for care in the clinical case management system and was receiving mental health services at that level of care, and concluded that placement at High Desert was appropriate.

Plaintiff's Exhibit 12 is a copy of a classification chrono dated September 17, 2003, indicating that plaintiff's case was reviewed by a treatment team on September 16, 2003, and that he was retained at Mule Creek pending a DMH transfer.  The document indicates that the committee reviewed plaintiff's classification in absentia due to his psychiatric instability and the fact that he was housed in a safety cell at that time.

Plaintiff's Exhibit 12A is a copy of a medical record dated March 1, 2003, noting that plaintiff presented as confused, with disorganized speech and thought process, admitted hearing voices, presented as delusional and paranoid but denied suicidal or homicidal ideation, and claimed to have a microphone in his left wrist where it was bandaged.

Under the Local Rules of Practice, a party opposing a motion for summary judgment is required to reproduce the facts contained in the moving party's statement of undisputed facts and to admit each fact that is undisputed and deny each fact that is disputed, including with each denial a citation to the evidentiary documents relied upon in support of the denial.  Local Rule 56-260(b).  A party opposing summary judgment is also permitted to file a concise statement of disputed facts, with citations to the record, that presents additional material facts as to which there is a genuine issue precluding summary judgment.  Id.  Plaintiff did not reproduce the facts contained in defendant's statement of undisputed facts and admit or deny each fact.  Nor did plaintiff submit his own statement of disputed facts.

III.  Defendant's Reply and Objections to Plaintiff's Evidence

Defendant notes plaintiff's failure to comply with Local Rule 56-260(b) and argues that all facts listed in defendant's statement of undisputed facts are now admitted and undisputed.  Defendant argues that he is entitled to summary judgment because the undisputed

1   facts demonstrate that he provided constitutionally adequate medical care and was not

2   deliberately indifferent to any of plaintiff's medical needs.  Citing Springate v. Weighmasters

3   Murphy, Inc. Money Purchase Pension Plan, 217 F. Supp. 2d 1007, 1016 n.3 (C.D. Cal. 2002),

4   defendant contends that summary judgment may be granted on the basis of the moving party's

5   uncontroverted statement of undisputed facts where the opposing party fails to contest the facts

6   as required by local rule.

7            Defendant offers a copy of the medical record he generated after seeing plaintiff

8   on February 25, 2003.  Defendant argues that this document corroborates his declaration and

9   shows that he thoroughly reviewed plaintiff's records and conducted a lengthy examination, as he

10  could not have prepared such a document if the examination had lasted only five to seven

11  minutes and he had not reviewed plaintiff's medical file.

12           Defendant contends that he met his initial responsibility of demonstrating the

13  absence of a genuine issue of material fact regarding his medical treatment of plaintiff, that the

14  burden shifted to plaintiff to establish the existence of a genuine issue as to any material fact, and

15  that plaintiff did not meet his burden because he cited no evidence that defendant was aware of a

16  risk of harm to plaintiff and disregarded that risk.

17           Defendant reviews the statements in plaintiff's declaration and notes that plaintiff

18  does not declare that he told defendant he was suicidal and that medication stopped this problem.

19  Defendant reasons that even if plaintiff's version of the facts as stated in his declaration were true

20  defendant could not have been deliberately indifferent if he did not know plaintiff's history, had

21  not seen plaintiff before, and did not know that plaintiff faced a substantial risk of harm.

22           Defendant asserts that plaintiff's declaration fails to dispute the following facts

23  asserted by defendant regarding his examination of plaintiff on February 25, 2003:  defendant

24  found no evidence of psychosis or disorganization; plaintiff's speech was clear and coherent;

25  plaintiff was oriented times three; plaintiff appeared goal directed and responsive; plaintiff's

26  affect was appropriate; plaintiff was not experiencing mood swings; plaintiff denied suicidal

ideation; plaintiff had been without medication for two to three months and had not made any suicide attempts in that time frame; plaintiff disagreed with defendant's opinion that medication was contraindicated and threatened to sue defendant and commit self-harm if defendant did not prescribe medication. Defendant concludes that, in the absence of any evidence to dispute these facts, there is no evidence to dispute defendant's medical opinion that plaintiff was not in need of psychiatric medication, and there is no evidence that defendant knew plaintiff faced a substantial risk of harm and consciously disregarded such risk. Defendant reiterates that plaintiff's mere disagreement with defendant's decision is not a basis for a finding of deliberate indifference.

The medical record submitted by defendant in rebuttal to plaintiff's argument is a CDC form titled "Chronological Interdisciplinary Progress Notes." The form is dated February 25, 2003, 1450 hours, and is signed by defendant, whose notes fill the entire page. The first line indicates that plaintiff complained of not having had medications since December. The next eleven lines record plaintiff's statements that he had been prescribed "'Lithium, Serqua or something, and Cogentin,'" had been sent to administrative segregation with a large number of black inmates because of a mistake, had a history of treatment for paranoid schizophrenia, seizures, and other medical problems, had been "taking meds all my life," admitted a history of PCP, marijuana, LSD, and other substance abuse for about 25 years, and was incarcerated for a vehicular accident with a fatality while he was "'under the influence.'"

The remaining thirteen lines of the medical record include defendant's observations, assessment, and prognosis. Defendant observed that plaintiff was oriented times three, his speech was clear and coherent, he was goal-directed and responsive, his affect was appropriate and broad in range, his mood seemed eurythmic, there was no gross evidence of psychosis or disorganization, and plaintiff denied suicidal or homicidal ideation. Defendant's review of the medication orders for plaintiff revealed that Lithium, Neurontin, and Seroquel were discontinued on January 2, 2003 due to reported hoarding. Defendant noted in brackets that "M.H. [mental health] chart entries, med clinic entries, and records room review of C-file for 128

entries do not document # of meds hoarded" but an outpatient record had an entry showing that

medications had been discontinued due to hoarding.  Defendant concluded that plaintiff had

medication compliance issues with a history of schizophrenia, affective disorder, and

polysubstance abuse.  The record concludes with defendant's decision:  "No reinstitution of meds

@ this pt – monitor for any M.H. deterioration.  Recall 6 wks."  (Def.'s Reply to Pl.'s Opp'n, Ex.

A.)

Defendant's objections to plaintiff's exhibits are set forth in a separate document.

Defendant objects to plaintiff's Exhibits 1 and 2 on the grounds that they contain hearsay, lack

foundation, and are not relevant to defendant's examination of plaintiff on February 25, 2003.

Defendant objects to plaintiff's Exhibit 3 because the copies of pictures of plaintiff's wrists are

not legible and the pictures lack foundation and are not relevant to this action.  Defendant objects

to plaintiff's Exhibit 4, the statement by plaintiff concerning the examination on February 25,

2003, because the exhibit lacks foundation, contains hearsay, and is not made under penalty of

perjury.  Defendant objects to plaintiff's Exhibits 5 and 5A, the statements of inmates Smith and

Jones, because the exhibits lack foundation, contain hearsay, and are not made under penalty of

perjury.  In addition, defendant objects that inmate Jones has never been treated at High Desert

State Prison and therefore any opinion concerning treatment at that institution would be

speculative and lack foundation.  Defendant objects to plaintiff's Exhibits 6 through 12A, the

copies of medical records, on the grounds that the exhibits lack foundation, are hearsay, contain

irrelevant information, have not been presented with any explanation of how they are relevant,

and, in some cases, are not legible and it is impossible to determine who authored them.

IV.  Plaintiff's Reply to Defendant's Reply and Objections

Plaintiff states that he does not fully understand the Local Rules and indicates that

he was assisted by a knowledgeable inmate at High Desert but has only recently obtained

assistance at CSP-Solano.  Plaintiff notes that he is a mental patient and that some of his

difficulties arise from being medicated.  Plaintiff requests that the court construe his filings

13

1  liberally, afford him the benefit of any doubt, and hold his pro se filings to less stringent

2  standards than documents filed by attorneys.

3          Plaintiff argues that defendant's evidence does not prove that defendant provided

4  him with psychiatric treatment consistent with community standards of care and within CDC

5  policies and procedures.  Plaintiff reiterates his contentions that the examination lasted no more

6  than seven minutes, that defendant put his feet on the desk and laughed at plaintiff, and that

7  defendant said plaintiff did not look crazy and only wanted the medications to get high.  Plaintiff

8  points to his own evidence that he was placed back on his medications two days after he was

9  examined by defendant and that he has been on the medications ever since.  Plaintiff argues in

10 conclusion that, if defendant had adequately reviewed plaintiff's psychiatric file and if defendant

11 had not been judgmental, he would have rendered adequate treatment and plaintiff's attempted

12 suicide would not have happened.

13         With regard to defendant's objection to Exhibit 1, plaintiff denies that the

14 document contains hearsay and lacks foundation.  Plaintiff denies that he submitted an Exhibit 2

15 dated November 14, 2002,[4] and does not respond to defendant's objections to Exhibit 2.  Plaintiff

16 contends that the photographs in Exhibit 3 do not lack foundation, are relevant, and have merit.

17 Plaintiff admits that Exhibits 4, 5, and 5A are not sworn under penalty of perjury but asserts that

18 he did the best he could without knowledge of legal requirements.  Plaintiff asserts that Exhibit 4

19 does not lack foundation, is not hearsay, and has merit, that Exhibits 5 and 5A also have merit,

20 and that inmate Jones is an expert witness based on his experience as a prisoner.  With regard to

21 the medical records in Exhibits 6 through 12A, plaintiff asserts that the records are signed by

22 various doctors and are relevant.

23 /////

24 /////

25

26         [4]  Plaintiff's Exhibit 2 is dated November 4, 2002.

14

1    STANDARDS FOR SUMMARY JUDGMENT PURSUANT TO RULE 56

2           Summary judgment is appropriate when it is demonstrated that there exists "no

3    genuine issue as to any material fact and that the moving party is entitled to a judgment as a

4    matter of law."  Fed. R. Civ. P. 56(c).  The moving party

5              always bears the initial responsibility of informing the district court
              of the basis for its motion, and identifying those portions of "the
6              pleadings, depositions, answers to interrogatories, and admissions
              on file, together with the affidavits, if any," which it believes
7              demonstrate the absence of a genuine issue of material fact.

8    Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

9           "[W]here the nonmoving party will bear the burden of proof at trial on a

10   dispositive issue, a summary judgment motion may properly be made in reliance solely on the

11   'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Summary

12   judgment should be entered, after adequate time for discovery and upon motion, against a party

13   who fails to make a showing sufficient to establish the existence of an element essential to that

14   party's case and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A]

15   complete failure of proof concerning an essential element of the nonmoving party's case

16   necessarily renders all other facts immaterial."  Id.  Summary judgment should be granted "so

17   long as whatever is before the district court demonstrates that the standard for entry of summary

18   judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

19          If the moving party meets its initial responsibility, the burden shifts to the

20   opposing party to establish that a genuine issue as to any material fact does exist.  See Matsushita

21   Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

22   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

23   of its pleadings but is required to tender evidence of specific facts in the form of affidavits and/or

24   admissible discovery material in support of the contention that a dispute exists.  See Fed. R. Civ.

25   P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The party opposing summary judgment must show

26   that any fact in contention is material, i.e., a fact that might affect the outcome of the suit under

15

1   the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury

2   could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S.

3   242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630

4   (9th Cir. 1987); Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

5          In trying to establish the existence of a factual dispute, the party opposing

6   summary judgment need not establish a material issue of fact conclusively in his or her favor.  It

7   is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

8   parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the

9   "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see

10  whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P.

11  56(e) advisory committee's note on 1963 amendments).

12         The evidence of the party opposing summary judgment is to be believed, and all

13  reasonable inferences that may be drawn from the facts placed before the court must be drawn in

14  favor of the party opposing summary judgment.  See Anderson, 477 U.S. at 255; Matsushita, 475

15  U.S. at 587.  Inferences will not be drawn out of the air, however; it is the opposing party's

16  obligation to produce a factual predicate from which an inference may be drawn.  See Richards v.

17  Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

18  (9th Cir. 1987).  The opposing party "must do more than simply show that there is some

19  metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not

20  lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

21  Matsushita, 475 U.S. at 587 (citation omitted).

22         On June 3, 2004, the court advised plaintiff of the requirements for opposing a

23  motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v.

24  Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th

25  Cir. 1988).

26  /////

1    LEGAL STANDARDS APPLICABLE TO PLAINTIFF'S CLAIMS

2        The Civil Rights Act under which plaintiff is proceeding provides that

3        [e]very person who, under color of [state law] . . . subjects, or
         causes to be subjected, any citizen of the United States . . . to the
4        deprivation of any rights, privileges, or immunities secured by the
         Constitution . . . shall be liable to the party injured in an action at
5        law, suit in equity, or other proper proceeding for redress.

6    42 U.S.C. § 1983.  The statute requires an actual connection or link between the actions of the

7    defendant and the deprivation alleged to have been suffered by the plaintiff.  See Monell v.

8    Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A

9    person 'subjects' another to the deprivation of a constitutional right, within the meaning of

10   § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to

11   perform an act which he is legally required to do that causes the deprivation of which complaint

12   is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

13       In the present action, plaintiff's claims arise under the Eighth Amendment.  The

14   unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by

15   the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430

16   U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).  In order to prevail on a

17   claim of cruel and unusual punishment, a prisoner must allege and prove that objectively he

18   suffered a sufficiently serious deprivation and that subjectively prison officials acted with

19   deliberate indifference in allowing or causing the deprivation to occur.  Wilson v. Seiter, 501

20   U.S. 294, 298-99 (1991).

21       Where a prisoner's Eighth Amendment claims arise in the context of medical

22   care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence

23   deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. at 106.  Such a

24   claim has two elements:  "the seriousness of the prisoner's medical need and the nature of the

25   defendant's response to that need."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991).  A

26   medical need is serious "if the failure to treat the prisoner's condition could result in further

17

1   significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at

2   1059 (quoting Estelle v. Gamble, 429 U.S. at 104).  Indications of a serious medical need include

3   "the presence of a medical condition that significantly affects an individual's daily activities."

4   Id. at 1059-60.  By establishing the existence of a serious medical need, a prisoner satisfies the

5   objective requirement for proving an Eighth Amendment violation.  Farmer v. Brennan, 511

6   U.S. 825, 834 (1994).

7           If a prisoner establishes the existence of a serious medical need, he or she must

8   then show that prison officials responded to the serious medical need with deliberate

9   indifference.  Farmer, 511 U.S. at 834.  In general, deliberate indifference may be shown when

10  prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown

11  by the way in which prison officials provide medical care.  Hutchinson v. United States, 838 F.2d

12  390, 393-94 (9th Cir. 1988).  Before it can be said that a prisoner's civil rights have been

13  abridged with regard to medical care, however, "the indifference to his medical needs must be

14  substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this

15  cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing

16  Estelle, 429 U.S. at 105-06).  Deliberate indifference is "a state of mind more blameworthy than

17  negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or

18  safety.'" Farmer, 511 U.S. at 835 (quoting Whitley, 475 U.S. at 319).

19          Delays in providing medical care may manifest deliberate indifference.  Estelle,

20  429 U.S. at 104-05.  To establish a claim of deliberate indifference arising from delay, a plaintiff

21  must show that the delay was harmful.  See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994)

22  (per curiam); McGuckin v. Smith, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335

23  (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd.

24  of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).

25          Mere differences of opinion between a prisoner and prison medical staff as to

26  proper medical care do not give rise to a § 1983 claim.  See Jackson v. McIntosh, 90 F.3d 330,

18

1  332 (9th Cir. 1996); <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989); <u>Franklin v. Oregon</u>, 662

2  F.2d 1337, 1344 (9th Cir. 1981).

3  DISCUSSION

4        Plaintiff has not complied with the requirements of Local Rule 56-260(b).

5  Defendant contends that all facts contained in defendant's statement of undisputed facts are

6  admitted and undisputed due to plaintiff's failure to comply with the rule.  Defendant argues that

7  summary judgment should be granted on the basis of defendant's uncontroverted statement of

8  undisputed facts.

9        Defendant's reliance on <u>Springate v. Weighmasters Murphy, Inc. Money Purchase</u>

10  <u>Pension Plan</u>, 217 F. Supp. 2d 1007, 1016 n.3 (C.D. Cal. 2002), is misplaced.  In that case,

11  summary judgment was granted for the plaintiff on the basis of plaintiff's uncontroverted

12  statement of undisputed facts.  The defendants, who were represented by counsel, had failed to

13  contest the plaintiff's facts in the manner required by Rule 56-2 of the Local Rules of the United

14  States District Court for the Central District of California.  The rule provided that "the Court will

15  assume that the material facts as claimed and adequately supported by the moving party are

16  admitted to exist without controversy except to the extent that such material facts are (a) included

17  in the 'Statement of Genuine Issues' and (b) controverted by declaration or other written

18  evidence filed in opposition to the motion."  <u>Id.</u>  In contrast, Rule 56-260(b) of the Local Rules of

19  the United States District Court for the Eastern District of California does not require or even

20  permit the court to assume that the moving party's facts are admitted when the opposing party

21  fails to reproduce the facts and admit or deny each of them.

22        Reliance on <u>Springate</u> is also misplaced because in this case the party opposing

23  summary judgment, unlike the parties opposing summary judgment in the Central District case,

24  is a plaintiff proceeding pro se.  District courts in this circuit are required to advise pro se

25  plaintiffs of the requirements for opposing a motion for summary judgment made by defendants.

26  See <u>Rand v. Rowland</u>, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); <u>Klingele v. Eikenberry</u>, 849

19

1   F.2d 409 (9th Cir. 1988).  By order filed June 3, 2004, the pro se plaintiff in this case was

2   advised of the briefing and evidentiary requirements and was cautioned that defendants' evidence

3   may be taken as the truth and that defendants' motion for summary judgment may be granted

4   "[i]f plaintiff fails to contradict the defendants' evidence with counteraffidavits or other

5   admissible evidence."  Plaintiff was not advised that facts listed in a defendant's statement of

6   undisputed facts may be deemed admitted if he fails to comply with the requirements of Local

7   Rule 56-260(b).

8          Accordingly, the facts set forth in defendant's statement of undisputed facts will

9   not be deemed admitted except to the extent that the pro se plaintiff has failed to contradict

10  defendant's evidence with admissible evidence.

11         The undersigned finds that defendant has borne his initial responsibility of

12  informing the court of the basis for his motion and of presenting evidence which he believes

13  demonstrates the absence of a genuine issue of material fact.  Defendant's evidence establishes

14  that as of February 25, 2003, he had been licensed as a medical doctor and psychiatrist in

15  California for over twenty years, he reviewed plaintiff's medical file on February 25, 2003, and

16  conducted a thorough examination, and he formed the opinion that plaintiff was not in need of

17  psychiatric medication at that time.  Defendant's evidence demonstrates that his opinion was

18  based on the following facts:  plaintiff's medications had been discontinued on January 2, 2003,

19  due to reported hoarding of medications; plaintiff had not received psychiatric medication since

20  December 2002 when he was placed in administrative segregation; plaintiff had a long history of

21  abusing various substances; when defendant examined plaintiff, he found no gross evidence of

22  psychosis or disorganization; plaintiff was oriented, his speech was clear and responsive, his

23  affect was appropriate, and he appeared goal directed and responsive; plaintiff's interaction with

24  defendant was highly cognitive and not suggestive of psychotic symptoms; plaintiff did not state

25  that he was experiencing extreme mood swings; plaintiff denied suicidal and homicidal ideation.

26  On the basis of these facts, defendant decided not to reinstate the discontinued psychiatric

1   medications but to schedule plaintiff for a further appointment in six weeks in order to monitor

2   plaintiff for mental health deterioration.  When defendant advised plaintiff of his decision and

3   treatment plan, plaintiff threatened to sue defendant and commit self-harm.  Defendant explained

4   to plaintiff that past conditions and problems did not justify receiving similar treatment and

5   medications absent a diagnosis showing that the same treatment and medications were still

6   warranted.  Defendant also explained that consuming the requested psychiatric medications

7   would make plaintiff feel drugged or high if he did not have the clinical conditions for which

8   those medications are indicated.

9          Defendant has supported his contention that he did not believe plaintiff faced any

10  substantial risk of harm by not being prescribed medications that had been discontinued two or

11  three months earlier, particularly when supplying such medications was contraindicated by a

12  history of substance abuse.  In the absence of evidence that defendant was aware of and

13  disregarded a substantial risk of harm, defendant has carried his initial burden of demonstrating

14  entitlement to judgment in his favor on plaintiff's Eighth Amendment claim.

15         The burden shifts to plaintiff to establish the existence of a genuine issue of

16  material fact.  After careful consideration of plaintiff's opposition, the undersigned finds that

17  plaintiff has offered evidence to dispute the following portions of defendant's Undisputed Fact 4:

18  (1) the statement that defendant performed his psychiatric assessment and examination of

19  plaintiff on February 25, 2003, consistent with the community standards of care for psychiatrists

20  and with CDC policies and procedures; (2) the statement that defendant reviewed plaintiff's file

21  before and during the examination; and (3) the statement that the examination lasted

22  approximately 40-45 minutes.  Plaintiff disagrees with defendant's expert opinion as expressed

23  in defendant's Undisputed Fact 8 but has offered no expert opinion to rebut defendant's.

24  Plaintiff has offered neither argument or evidence that disputes defendant's Undisputed Facts 1,

25  2, 3, 5, 6, 7, and 9.

26  /////

1     After careful consideration of the evidence submitted by plaintiff with his

2  opposition, the undersigned finds that plaintiff's declaration dated September 21, 2005, is the

3  only admissible evidence relevant to the disputed portions of defendant's Undisputed Fact 4.   In

4  the declaration, plaintiff declares under penalty of perjury that he was examined for less than

5  seven minutes and that defendant did not open plaintiff's medical file during the time plaintiff

6  was in the office.  (Pl.'s Opp'n to Def.'s Mot. for Summ. J., Decl. of Michael Anderson dated

7  Sept. 21, 2005, at 1-2.)

8     Although plaintiff has also offered an inmate statement concerning the length of

9  psychiatric appointments in California prisons in general, the Jones statement is neither notarized

10  nor sworn under penalty of perjury, and it is not based on personal knowledge of psychiatric

11  examinations at High Desert State Prison or personal knowledge of the specific psychiatric

12  examination at issue in this case.  (See Pl.'s Opp'n, Ex. 5A.)  In addition, plaintiff has not

13  demonstrated that inmate Jones qualifies as an expert witness.  The Smith statement submitted by

14  plaintiff is neither notarized nor sworn under penalty of perjury, and it contains no information

15  about the length of defendant's examination of plaintiff, defendant's review of plaintiff's file, or

16  the community standards of care.  (See id., Ex. 5.)  Plaintiff's notes dated February 25, 2003, are

17  neither notarized nor sworn under penalty of perjury.  (See id., Ex. 4.)  While plaintiff's

18  contemporaneous notes are silent about the length of the examination on February 25, 2003, the

19  notes describe a conversation that appears to have exceeded seven minutes.

20     The remainder of plaintiff's evidence concerns facts that are not in dispute:

21  plaintiff received treatment for mental health needs prior to incarceration (Exhibits 1 and 2);

22  plaintiff cut his wrists on February 26, 2003 (Exhibit 3); psychiatric medicines were prescribed

23  for plaintiff after February 25, 2003 (Exhibits 6-10 and 12A); plaintiff pursued an inmate appeal

24  concerning defendant's examination (Exhibit 11); plaintiff had a period of psychiatric instability

25  in September 2003 (Exhibit 12).  Plaintiff has not offered evidence that shows what pre-

26  incarceration medical records, if any, were in his medical file as of February 25, 2003, when

1   defendant reviewed the file.  Plaintiff's evidence contradicts plaintiff's assertion that

2   "[i]mmediately after Plaintiff's episode [on February 26, 2003,] all his medications were renewed

3   and have continued to this present time."  (Pl.'s Opp'n at 5.)  The evidence before this court

4   shows that prior to December 31, 2002, plaintiff was prescribed Lithium, Seroquel, and

5   Cogentin.  Plaintiff's exhibits concerning treatment after February 26, 2003, show that his

6   Lithium prescription was reinstated on February 27, 2003, but the exhibits do not show that his

7   Seroquel and Cogentin prescriptions were ever reinstated.

8             In light of plaintiff's pro se status, the undersigned has examined plaintiff's

9   complaint, which he signed under penalty of perjury, and the exhibits attached to the complaint.

10   The undersigned finds that the complaint contains no allegation concerning the length of the

11   examination on February 25, 2003, but it does contain an allegation that defendant "never open

12   my file in front of me."  (Compl., Attachs. at 2.)  The exhibits to the complaint are for the most

13   part duplicates of the exhibits offered in support of plaintiff's opposition to summary judgment,

14   along with a copy of the claim plaintiff submitted to the state board of control and copies of

15   various articles of a general nature concerning the treatment of manic depression.

16             "A scintilla of evidence or evidence that is merely colorable or not significantly

17   probative does not present a genuine issue of material fact" precluding summary judgment.

18   Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  See also Summers v. A.

19   Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997).  On summary judgment the court is

20   not to weigh the evidence or determine the truth of the matters asserted but must only determine

21   whether there is a genuine issue of material fact that must be resolved by trial.  See Summers,

22   127 F.3d at 1152.  Nonetheless, in order for any factual dispute to be genuine, there must be

23   enough doubt for a reasonable trier of fact to find for the plaintiff in order to defeat a defendant's

24   summary judgment motion.  See Addisu, 198 F.3d at 1134.

25             Plaintiff has provided nothing more than a scintilla of admissible evidence

26   concerning the length of the examination conducted by defendant on February 25, 2003.  That

1   scintilla of evidence consists of plaintiff's own testimony uncorroborated by any documentary

2   evidence.  The medical record generated by defendant on February 25, 2003, and plaintiff's

3   contemporaneous notes, his inmate appeal, and his allegations concerning his interview with

4   defendant all support an inference that more than seven minutes were required for defendant to

5   review the files prior to the interview, to converse with plaintiff while observing him, and to

6   prepare the medical record that was generated.  The dispute over the length of the examination is

7   not sufficiently probative to constitute a genuine issue of material fact that must be resolved by a

8   trial.  Whether the examination lasted 5 minutes or 45 minutes, plaintiff has not contradicted

9   defendant's evidence that he reviewed plaintiff's medical and central files, interacted with

10  plaintiff and observed him, formed an opinion that was based on the files, his observations, and

11  his training, and wrote detailed notes for the file.

12          Plaintiff has also provided nothing more than a scintilla of admissible evidence

13  concerning defendant's review of the file while plaintiff was in the office with defendant.  That

14  scintilla of evidence consists of plaintiff's own testimony.  The dispute over when defendant

15  reviewed the file is not sufficiently probative to constitute a genuine issue of material fact that

16  must be resolved by a trial.  Regardless of when defendant reviewed plaintiff's files, defendant

17  has established that he did review the files, raised issues arising from information in the files, and

18  based his decision on what he found in the files as well as on his observations and training.

19          No evidence offered by plaintiff supports a conclusion that defendant acted with

20  the substantial indifference required to support an Eighth Amendment claim of constitutionally

21  inadequate medical or mental health care.  Such indifference is an element essential to plaintiff's

22  constitutional claim, and plaintiff's complete failure of proof concerning the subjective element

23  of his claim renders all other facts immaterial.  Plaintiff has demonstrated nothing more than

24  dissatisfaction with the defendant's bedside manner and a layperson's disagreement with a

25  doctor's decision on how to treat a patient.  Summary judgment should be entered for defendant.

26  /////

1        Accordingly, IT IS RECOMMENDED that:

2        1.  Defendant's September 1, 2005 motion for summary judgment be granted; and

3        2.  This action be dismissed.

4        These findings and recommendations are submitted to the United States District

5 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

6 days after being served with these findings and recommendations, any party may file written

7 objections with the court and serve a copy on all parties.  A document containing objections

8 should be titled "Objections to Findings and Recommendations."  Any reply to objections shall

9 be served and filed within ten days after service of the objections.  The parties are advised that

10 failure to file objections within the specified time may, under certain circumstances, waive the

11 right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

12 DATED: June 26, 2006.

13

14

15 DALE A. DROZD
   UNITED STATES MAGISTRATE JUDGE

16 DAD:13
   ande0583.57

17

18

19

20

21

22

23

24

25

26

25